UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY ELLIS,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. 13-2056 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff Anthony Ellis is currently incarcerated and awaiting trial on federal drug and firearm charges, based in part on wiretap evidence. Believing that the FBI unlawfully listened to his calls, he filed a Freedom of Information Act request with the Department of Justice seeking records related to that surveillance. Dissatisfied with DOJ's response, Ellis then brought this suit. Justice now moves for summary judgment, maintaining that its search was adequate and that certain documents were properly withheld under FOIA exemptions. Because the Court agrees, it will grant the Motion.

**I.**     **Background**

Ellis was indicted in 2012 on one count of conspiracy to distribute 100 grams or more of heroin and one count of conspiracy to carry and possess a firearm in furtherance of a drug-trafficking crime. See Mot., Exh. 2 (Declaration of Peter C. Sprung), ¶ 6. He filed a FOIA request on May 27, 2013, asking that DOJ disclose "Title III interception of electronic communication approval letters and all other documents that are part of electronic surveillance for the following [three] telephone numbers" with which Ellis allegedly communicated. See

Sprung Decl., Exh. A (Original FOIA Request). None of these telephone numbers belonged to Ellis. See id., ¶ 6. On July 3, DOJ's Office of Enforcement Operations acknowledged receipt of his request. See Compl., Exh. A (Request Acknowledgment Letter) at 1. Twelve days later, OEO mailed Ellis a letter stating that "to the extent responsive records do exist, they are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3)." Compl., Exh. B (July 15, 2013, Response Letter) at 1. That FOIA exemption protects records that must be withheld pursuant to another statute's requirements – in this case, Title III's wiretap provisions.

After receiving this response, Ellis filed an appeal with the Director of the Office of Information Policy. See Compl., ¶ 7. OIP acknowledged receipt of the appeal on August 12, 2013, and informed Plaintiff that it would "notify [him] of the decision on [his] appeal as soon as we can." Compl., Exh. C (August 12, 2013, Appeal Acknowledgment Letter) at 1. Contending that he never received a substantive response to his appeal, see Compl., ¶ 11, Ellis filed this action on December 26, 2013, naming as defendants the head of the Criminal Division's FOIA/PA Unit, as well as the heads of OEO and OIP. See id. at 1. Because FOIA applies only to executive-branch agencies and not individuals, the Court substituted the Department of Justice as the named Defendant. See ECF No. 4 (December 31, 2013, Order). In his suit, the documents he seeks are somewhat narrower than in his original request: "Title III authorization letters, memorandums, and any other documents involved in their approval for the electronic surveillance for the following telephone numbers Plaintiff is alleged to have had conversations intercepted over . . . ." Compl., ¶ 4.

While this suit was pending, and notwithstanding its initial categorical invocation of FOIA Exemption 3, DOJ conducted a search of two records systems and located many responsive records. See Mot. at 2; Sprung Decl., ¶¶ 10-20. In October 2014, the agency released

2

in full 677 pages and withheld in full approximately 2,651 others. See Sprung Decl., ¶ 36. It has now moved for summary judgment.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavit, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and

discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.    Analysis**

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules … shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552 (a)(3); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552 (a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

In seeking summary judgment, DOJ argues that it conducted an adequate search, properly withheld records under certain FOIA exemptions, and has no obligation to further segregate withheld material. The Court will address these arguments in turn.

A.     Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (*per curiam*). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

As a quick reminder, the documents Plaintiff seeks here are "Title III authorization letters, memorandums, and any other documents involved in their approval for the electronic surveillance for the following telephone numbers Plaintiff is alleged to have had conversations intercepted over . . . ."  Compl., ¶ 4.  Attached to its Motion, DOJ offered the declaration of Peter Sprung, a trial attorney in the Criminal Division, who detailed the steps the agency took to find these records.  He explains that he searched the following two records systems: (1) "[the] OEO database used to track federal prosecutors' requests for permission to apply for court-authorization" to conduct Title III wiretaps, and (2) the archived email system maintained by the Criminal Division's Information Technology department.  See Sprung Decl., ¶ 10.

Justice searched the OEO database because any prosecutor seeking to obtain court authorization for a Title III application must first obtain approval from senior officials in DOJ's Criminal Division.  See id., ¶ 12; 18 U.S.C. §§ 2516(1), 2518(1)(a).  Before those officials sign off on the request, it is processed and reviewed by attorneys in OEO's Electronic Surveillance Unit, who, *inter alia*, "review[] the request to ensure that it complies with Title III."  Sprung Decl., ¶ 12.  The OEO database contains both the requests for permission to obtain a wiretap and the approval letters signed by the Criminal Division officials.  It follows that because Ellis requested records relating to DOJ's approval of electronic surveillance of certain telephone numbers, any responsive records would almost certainly be located in the database specifically designated for this purpose.  The agency searched this database for records containing the specified telephone numbers and the name "Anthony Ellis."  See id., ¶ 15.

DOJ also searched the archived email system – called "Enterprise Vault" – that automatically archives all emails older than 30 days that have been sent or received by Criminal Division employees.  See id., ¶ 16.  Because the search of the Title III database revealed the

6

identity of "the [ESU] attorney who reviewed the request to do the wiretapping at issue in this case and the prosecutor who made the request[,] and [] the time period during which these attorneys were in communication with each other," the agency was then able to search the archived emails of the ESU attorney for all correspondence between that attorney and the prosecutor. See id., ¶ 19.

DOJ concludes, therefore, that it "searched the two records systems that would contain information responsive" to Plaintiff's request and that this search was "in good faith . . . reasonable and complete." Id., ¶ 19. Indeed, the search yielded over 3,000 responsive documents. Ellis rejoins that it was nonetheless inadequate for the following three reasons: (1) the agency did not conduct its FOIA search until after the lawsuit was filed, (2) the search was inadequate, insufficient, unreasonable, and conducted in bad faith, and (3) DOJ never conducted a Privacy Act search for his records. The Court considers each separately.

    1. *Post-Suit Search*

Ellis first contends that DOJ violated FOIA by waiting to conduct a search until after his suit was filed. See Opp. at 8. Although he is correct about the timing of the search, this does not mean he is entitled to all requested records. On the contrary, the only consequence of this delay would be a finding that Plaintiff constructively exhausted his administrative remedies and was therefore entitled to bring this suit. See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n, 711 F.3d 180, 184 (D.C. Cir. 2013) ("[I]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."). As DOJ does not proffer any exhaustion defense here, the point is moot. To the extent Plaintiff seeks monetary damages because of DOJ's dilatory conduct, moreover, FOIA provides no such remedies. See Davis v.

Attorney Gen., 562 F. Supp. 2d 156, 159 (D.D.C. 2008) ("Unlike the remedies available under the Privacy Act, the FOIA does not provide for monetary damages but rather authorizes the district court only 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'") (citing 5 U.S.C. § 552(a)(4)(B) and Johnson v. Executive Office of the United States Attorneys, 310 F.3d 771, 777 (D.C. Cir. 2002)). The delay in DOJ's search thus does not affect its adequacy.

   2.  *General Challenges to Search*

For the most part, Ellis offers sweeping contentions that the FOIA search was inadequate, insufficient, unreasonable, and conducted in bad faith. This position is unconvincing, as DOJ, through its declaration, has articulated which databases were searched, why those databases were selected, and what documents were located. See Sprung Decl., ¶¶ 10-20. It has also made clear that it searched "the two records systems that would contain information responsive" to Plaintiff's request. See id., ¶ 19.

Beyond his broad challenges, Ellis sets forth, as best the Court can discern, three more specific challenges to the overall scope of the search. First, he objects to the fact that the agency searched only one component of DOJ – *i.e.*, the Criminal Division. See Opp. at 14. Ellis argues that DOJ should have instead conducted a broader search by including two FBI indices – namely, "ELSUR" and "CRS" – and another unidentified Executive Office of U.S. Attorneys index. See Opp. at 10-16. Plaintiff, however, brought suit specifically against Criminal Division supervisors – who were subsequently replaced by DOJ as the named Defendant – and he did not name the FBI or EOUSA. As Justice correctly observes, the above indices are not within the Criminal Division's control, but rather are housed in separate components within DOJ. See Reply at 4; Dugan v. Dep't of Justice, No. 13-2003, 2015 WL 1090323, at *5 (D.D.C. Mar. 12,

2015) (FOIA suit against DOJ does not extend to component agencies EOUSA and Bureau of Prisons); see also 28 C.F.R. § 16.3(a)(1) ("The Department has a decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records from that component. . . . To make a request for records of the Department, a requester should write directly to the FOIA office of the component that maintains the records being sought."). If Plaintiff was unsure of the location of the records that he sought, he could have sent his request, per FOIA regulations, to DOJ's catch-all "FOIA/PA Mail Referral Unit," which would have then forwarded the request to the appropriate components. See id. § 16.3(a)(1). Ellis thus may not complain that the agency failed to search indices under the control of the FBI or EOUSA.

Ellis further asserts that Justice failed to search the Criminal Division's own "003" and "019" indices. See Opp. at 15-16. The agency replied that it did, in fact, search the latter index – *i.e.*, the Title III database – but concedes that it did not search the former, also known as "File of Names Checked to Determine If Those Individuals Have Been the Subject of an Electronic Surveillance System of Records." 28 C.F.R. § 16.91(g). As DOJ reasonably explains, the "003" index contains the "names of individuals who have been the subject of an electronic surveillance," and Plaintiff's request did not seek information of this type. See Reply at 4. Rather, as Ellis requested information concerning the approval of surveillance for certain specified telephone numbers, an "003" search was not required.

Finally, Ellis posits that the agency engaged in bad faith by conducting its search "nearly 14 months after initially admittedly receiving" his request, thus rendering summary judgment inappropriate. See Opp. at 15. It is true that courts may deny summary judgment when an agency acts in bad faith. See Bartko v. Dep't of Justice, No. 13-1135, 2015 WL 2091229, at *7 (D.D.C. May 6, 2015). In determining what conduct rises to that level, however, "[c]ourts

routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith." Skurow v. Dep't of Homeland Sec., 892 F. Supp. 2d 319, 326 (D.D.C. 2012); see also Bartko, No. 13-1135, 2015 WL 2091229, at *7 (collecting cases). As the only evidence Plaintiff offers is agency delay, he cannot foreclose summary judgment, which the Court will grant for Justice on the adequacy of the search.

        3. *Privacy Act Search*

In his Opposition, Ellis now maintains that DOJ also failed to conduct any Privacy Act search. See Opp. at 9-10. The only reference to the Privacy Act in his Complaint, however, is in passing – *viz.*, that he filed a "FOIA/PA" request. See Compl., ¶ 4. He also never makes clear, in any of his briefings, what relief he seeks under the Privacy Act. See Opp. at 9-10. "Plaintiff confuses the FOIA, where, as here, the propriety of an agency's withholding of records is at issue, with the Privacy Act, 5 U.S.C. § 552a, where the propriety of an agency's collection, maintenance, use and dissemination of one's personal records is at issue." Davis v. Attorney Gen., 562 F. Supp. 2d 156, 159 (D.D.C. 2008).

Even if he did want the agency to conduct a Privacy Act "search," any such search would be coextensive with the search it carried out in responding to his FOIA request. Indeed, the D.C. Circuit has held that the adequacy of the search for both FOIA and Privacy Act requests is analyzed under the same standard. See Chambers v. Dep't of Interior, 568 F.3d 998, 1003 (D.C. Cir. 2009) (citing Valencia-Lucena, 180 F.3d at 326). It follows that since the agency conducted an adequate search under FOIA, it also satisfied the Privacy Act's requirements.

    B.    Exemption 5

In withholding in full approximately 2,651 pages, DOJ invokes FOIA Exemptions 5, 6, and 7(C). See Sprung Decl., ¶ 36. Because it relies on Exemption 5 for each withheld

document, the Court examines this one alone. See, e.g., Simon v. Dep't of Justice, 980 F.2d 782, 785 (D.C. Cir. 1992) (finding records exempt from FOIA under one exemption and declining to address any other).

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, under Exemption 5, an agency may withhold "those documents, and only those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984). Exemption 5 encompasses three distinct components: the attorney-work-product privilege, deliberative-process privilege (sometimes called "executive privilege"), and attorney-client privilege. See Am. Immigration Council v. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012). Justice here relies on the first.

"The attorney work-product [prong of Exemption 5] extends to 'documents and tangible things that are prepared in anticipation of litigation or for trial' by an attorney." Id. at 221 (quoting Fed. R. Civ. P. 26(b)(3)(A)). As this Court has noted in the past, the work-product privilege is relatively broad, encompassing documents prepared for litigation that is "foreseeable," even if not necessarily imminent. See id. The privilege, however, is not endless. No doubt potential future litigation "touches virtually any object of a [law-enforcement-agency] attorney's attention," but "if the agency were allowed to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (internal quotation marks omitted).

When reviewing a withholding under the work-product prong, then, the D.C. Circuit employs a because-of test, inquiring "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." FTC v. Boehringer Ingelheim Pharms. Inc., 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting United States v. Deloitte LLP, 610 F.3d 129, 137 (D.C. Cir. 2010).  Where a document would have been created "in substantially similar form" regardless of the litigation, work-product protection is not available.  See Deloitte, 610 F.3d at 138 (quoting United States v. Adlman, 134 F.3d 1194, 1195 (2d Cir. 1998)).

As the D.C. Circuit has observed, this means that the Government must at least demonstrate that the lawyer who prepared the document possessed the "subjective belief that litigation was a real possibility, and [the] belief [was] objectively reasonable." In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998).  It follows that, in order for the Government to discharge its evidentiary burden, it must (1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable.  See id.

The Criminal Division withheld the following categories of documents pursuant to the privilege here:

- Prosecutors' requests for permission to apply for court-authorization to intercept wire communications, including applications, affidavits of law enforcement agents, and proposed court orders;
- Office of Enforcement Operations (OEO) Title III System Logging Notes indicating that OEO has received a request from a prosecutor for permission to apply for a Title III order with respect to specified telephone numbers;
- Email messages from Electronic Surveillance Unit (ESU) to Assistant United States Attorneys (AUSA) acknowledging receipt of the AUSA's Title III application;

- Email messages between the prosecutor making the request and the ESU attorney assigned to review it, in which the attorneys discuss the ESU review process, edits, revisions, etc.[;]
- Action memoranda from OEO to the Assistant Attorney General (AAG) recommending approval of prosecutors' request;
- Authorization Memorandums from the AAG to OEO advising that the prosecutor's request has been approved and an attached copy of the AG's delegation of authority to the AAG; and
- Letters signed by Deputy AAG's on behalf of the AAG to a U.S. Attorney advising that the AAG has approved the prosecutor's request to apply for a Title III order.

Mot. at 8-9.

The agency's detailed explanations in both its declaration and Vaughn Index for why the lion's share of these documents were withheld clearly suffice. See Sprung Decl., ¶ 25; Exh. D (Vaughn Index). First, it described the nature and contents of the withheld documents. See, e.g., Vaughn Index at 1 ("This is a request by an AUSA to OEO for permission to apply for a Title III order concerning mobile tel. no. 412-224-0243 and another number. It was accompanied by drafts of the application, affidavit, and proposed orders."). Second, it identified the documents' origins. See, e.g., id. ("An AUSA prepared this document and submitted it to ESU as part of the wiretap application process."). Third, it noted the investigative circumstances around their creation. See, e.g., id. at 2 ("[The] action memorandum . . . includes the name of the subject of the investigation . . . [and] the names of those individuals whose conversations have already been intercepted . . . ."). Finally, it indicated the foreseeable criminal prosecution for which the documents were created. See, e.g., id. (document was prepared in anticipation of "a criminal prosecution of the individuals allegedly involved in the criminal activity that was evidenced by the court-ordered interceptions").

These types of documents, in short, are classic attorney work product, the disclosure of which would risk putting DOJ's lawyers' thought processes and strategy on public display. The

records include research and analysis, as well as recommendations about possible courses of action, created in preparation for criminal prosecution. See SafeCard Servs., Inc., 926 F.2d at 1203 ("[W]here an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product."); Wolfson v. United States, 672 F. Supp. 2d 20, 30 (D.D.C. 2009) (memoranda prepared by Criminal Division attorneys "in anticipation of a criminal prosecution" recommending that authorization be granted to apply for Title III order was properly withheld under attorney-work-product privilege because release would reveal attorneys' thought processes); Durrani v. Dep't of Justice, 607 F. Supp. 2d 77, 84 (D.D.C. 2009) (email between attorneys and drafts of indictment and prosecutorial memorandum covered by privilege); Winterstein v. Dep't of Justice, Office of Info. & Privacy, 89 F. Supp. 2d 79, 81 (D.D.C. 2000) (same); Government Accountability Project v. Dep't of Justice, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (DOJ properly withheld communications between a Criminal Division attorney and her supervisor relating to whether DOJ should pursue prosecution); Miller, 562 F. Supp. 2d at 114-15 (DOJ properly withheld documents "reflect[ing] such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to" the defendant's criminal case); cf. also Rockwell Int'l Corp. v. Dep't of Justice, 235 F.3d 598, 605 (D.C. Cir. 2001) (parties stipulated that DOJ memoranda prepared in anticipation of criminal prosecution covered by privilege). Indeed, another judge in this district court, dealing with virtually identical facts, recently reached the same conclusion. See Dorsey v. Drug Enforcement Admin., No. 11-1350, 2015 WL 1431707, at *4-5 (D.D.C. Mar. 28, 2015) (DOJ wiretap-application-process memoranda covered by attorney-work-product privilege).

Certain withheld records are a closer call, however. The second and third categories of documents listed above, while undeniably part of an attorney's work product, possess a partially administrative character. These documents include system logging notes indicating that OEO has received a request from a prosecutor for permission to apply for a Title III order and emails from ESU attorneys to AUSAs acknowledging receipt of Title III applications. Because these quasi-administrative records were compiled in anticipation of a specific criminal prosecution and are not generic agency records maintained for some conceivable future litigation, this Court joins several other courts in this District that have held that the work-product privilege protects them. See White v. Dep't of Justice, 952 F. Supp. 2d 213, 219 (D.D.C. 2013) (forms used by attorneys to track and describe the status of investigation in anticipation of prosecution); Geronimo v. Executive Office of U.S. Attorneys, No. 05-1057, 2006 WL 1992625, at *4 (D.D.C. July 14, 2006) (internal, administrative "Opening/Closing" form completed by AUSA and directed to supervisors); Soghoian v. Dep't of Justice, 885 F. Supp. 2d 62, 73 (D.D.C. 2012) ("The availability of the privilege is even clearer where documents relate to specific litigation."). The Court thus agrees that even these partially administrative records may be properly withheld here.

Plaintiff's primary argument in response is that the government-misconduct exception applies, thus vitiating the work-product privilege. See Opp. at 23-30, 29. As an initial matter, this exception has only been applied to a different privilege covered by FOIA Exemption 5 – the deliberative-process privilege. See, e.g., Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 903 F. Supp. 2d 59, 66-68 (D.D.C. 2012). Even assuming the exception did apply to the work-product privilege, it is construed very narrowly and only in cases of extreme government wrongdoing. See id.; see also Neighborhood Assistance Corp. of Am., v. Dep't of Hous. & Urban Dev., 19 F. Supp. 3d 1, 14 (D.D.C. 2013) (collecting cases that "recognize a similarly

15

high benchmark [of] . . . nefarious or extreme government wrongdoing"). Plaintiff has offered no specific allegation or evidence to satisfy this high standard.

C.   Segregability

Plaintiff last objects that DOJ's segregability analysis is insufficient. In the FOIA context, "[i]f a document is fully protected as work product, then segregability is not required." Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 371 (D.C. Cir. 2005); Citizens for Responsibility & Ethics in Washington v. Dep't of Justice, 48 F. Supp. 3d 40, 51 (D.D.C. 2014) (segregability analysis was not required for documents protected by work-product exemption). The Court thus need not examine segregability here.

IV.   Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting Defendant's Motion for Summary Judgment.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 22, 2015